William Carl **NOLTE**, Respondent,

v.

Linda Anne **MEHRENS**, Appellant.

No. C5–02–164.

Court of Appeals of Minnesota.

July 30, 2002.

John R. Hill, Larkin, Hoffman, Daly & Lindgren Ltd., Bloomington, MN, for respondent.

Lisa M. Elliott, Elliott Law Offices, P.A., Edina, MN, for appellant.

Considered and decided by LANSING, Presiding Judge, G. BARRY ANDERSON, Judge, and HANSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

This case arises from the district court's use of the Hortis/Valento formula to set the parties' child support obligations. In doing so, the district court found that the parties had stipulated to joint legal custody and that respondent-mother had "primary physical custody," but did not indicate whether mother had sole physical custody or whether the parties shared joint physical custody. The district court also failed to address which party was responsible for the child's uninsured medical expenses and denied the request of appellant-father to appoint a parenting time expeditor. Because an award of physical custody under Minnesota Statutes chapter 518 must affirmatively identify whether the custody award is joint physical custody or sole physical custody to one parent, we remand for the district court to identify the nature of the physical-custody award of the parties' child. On remand, the district court shall also address the parties' responsibilities for the child's uninsured medical expenses. We affirm the district court's denial of father's motion to appoint a parenting time expeditor.

## FACTS

Linda Anne Mehrens is the mother of a child born in 1997. In 1999, William Carl Nolte, the child's father, filed a paternity action; he was later adjudicated the child's father. The parties subsequently stipulated (1) that mother would have "primary physical custody"; (2) that the parties would share joint legal custody; and (3) to their respective net incomes. After an evidentiary hearing, the parties submitted proposed findings, addressing several topics, including child support and uninsured medical expenses.

In June 2001, a referee issued a recommended order that (1) set a parenting time schedule; (2) set the parties' child support obligations using the Hortis/Valento formula; and (3) addressed childcare costs. The district court adopted the referee's recommended order.[1]

---

1. Even though father's paternity action was brought under chapter 257 of Minnesota stat-

Mother challenged the district court's order, moving for amended findings or a new trial. In November 2001, the referee issued a second order that, among other things, denied mother's request to address uninsured medical expenses. The district court also adopted this order. Neither party sought district court review of either of the referee's orders. Mother directly appealed from the orders, and father filed a notice of review.[2]

## ISSUES

I. Did the district court abuse its discretion when it applied the Hortis/Valento formula to compute the parties' child support obligations?

II. Did the district court err when it failed to address uninsured medical expenses in its order and denied mother's motion to amend the order to include a provision addressing the uninsured medical expenses?

III. Did the district court abuse its discretion when it denied father's motion to appoint a parenting time expeditor?

## ANALYSIS

### I.

■ Before the district court, mother challenged the court's finding that she has custody of the parties' son 60 percent of the time. Before this court, mother ar-

gues the district court should not have used the Hortis/Valento formula to set the parties' child support obligations because (1) mother has sole physical custody of the child; (2) when one parent has sole physical custody of a child, use of the Hortis/Valento formula to set support is a deviation from the child support guidelines of Minn. Stat. § 518.551, subd. 5 (2000), which are rebuttably presumed to be applicable; (3) the district court did not make any of the statutorily required findings to deviate from the guidelines; and (4) the failure to make findings allowing deviation renders father's non-guideline support obligation defective. *See Schlichting v. Paulus,* 632 N.W.2d 790, 792–93 (Minn.App.2001) (addressing application of Hortis/Valento formula).

Although mother's arguments before this court and the district court address the child support obligations of the parties, the arguments before each court are based on different legal theories. Generally, a party waives an argument if the party does not raise that argument in the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that reviewing court generally considers only those issues presented to and considered by district court). But mother did challenge aspects of the June 2001 order relating to father's support obligation, including the findings regarding the amount of time the parties spend with their child. We conclude on this record that the issue was

utes, that chapter requires the use of chapter 518 to address, inter alia, child support determination. Minn.Stat. § 257.66, subd. 3 (2000). Therefore, the district court correctly used chapter 518 in resolving this dispute.

2. Mother attempted to challenge the district court's original order through her motion for amended findings or new trial. Normally, where there is no request for "rule 53 review" of a referee's ruling, we apply a narrow scope of review, focusing on whether there is sup-

port in the record for the referee's findings of fact and whether the findings support the conclusions of law and the judgment. *Kahn v. Tronnier,* 547 N.W.2d 425, 428 (Minn.App. 1996), *review denied* (Minn. July 10, 1996). We conclude that *Kahn's* narrow scope of review is inappropriate here because mother effectively gave the district court an opportunity to review its original order, and the district court issued an order that addressed mother's motion. We limit our conclusion, however, to the facts of this case.

adequately presented to and considered by the district court.

■ A district court has broad discretion to provide for the support of the parties' children. *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn.1984). The district court abuses its discretion when it sets child support in a manner that is contrary to logic and the facts in the record. *Id.*

■ Use of the Hortis/Valento formula where one parent has sole physical custody is a deviation from the child support guidelines, and must be supported by findings on the statutory factors enumerated in Minn.Stat. § 518.551, subds. 5(c), 5(i) (2000). *Rogers v. Rogers,* 622 N.W.2d 813, 821 (Minn.2001). Where parents have joint physical custody, however, the Hortis/Valento formula is the appropriate method for setting support. *Schlichting,* 632 N.W.2d at 792–93. Therefore, identifying whether the parties have joint physical custody or whether one party has sole physical custody is critical to setting the parties' support obligations.

■ Here, the parties stipulated to "primary physical custody" by mother. The supreme court has indicated that when a district court adopts the stipulation of parents regarding physical custody, the label the parties place on their stipulated custodial arrangement is binding:

> Where * * * the parties have agreed, by stipulated decree, to joint legal custody and joint physical custody * * * and the court has accepted that denomination, the parties will be bound by it.

*Ayers v. Ayers,* 508 N.W.2d 515, 520 (Minn.1993). Recently, the supreme court reaffirmed *Ayers* stating:

> We have held that when parties have agreed to a specific denomination of physical and legal custody and that de-

nomination has been accepted by the district court, the parties will be bound by it. *See Ayers,* 508 N.W.2d at 520. Such denominations, we have said, "will require careful drafting by the parties in the first instance [and] will provide more certainty in resolving future disputes." *Id.*

*Frauenshuh v. Giese,* 599 N.W.2d 153, 157 (Minn.1999). Even more recently, this court noted the primacy of a district court's characterization of a stipulated physical-custody arrangement. *Blonigen v. Blonigen,* 621 N.W.2d 276, 281 (Minn. App.2001) (applying *Ayers* ), *review denied* (Minn. Mar. 13, 2001). Thus, when parents stipulate to a physical-custody arrangement and the district court adopts that arrangement, the dispositive factor in determining whether the arrangement establishes sole physical custody for one parent or joint physical custody for both parents, and therefore whether it is presumptively appropriate to apply the Hortis/Valento child support formula, is the district court's description of the physical-custody arrangement.[3]

That parties are bound by the agreed-on physical-custody arrangement adopted by the district court does not resolve the question whether a physical-custody arrangement is sole or joint when the custody characterization is described by other terms. And here, not only did the district court fail to explicitly characterize the parties' physical-custody arrangement as sole or joint, but the parties also continued to disagree on that point as recently as during oral arguments before this court.

There is no clear statutory requirement that a district court's determination of physical custody specify whether the award is sole or joint. *Compare* Minn.

**3.** Although it could be argued that some earlier caselaw indicates that discerning whether a physical-custody award is sole or joint requires an examination of the amount of time the parties spend with their child, *Ayers* and its progeny have superseded such cases.

Stat. § 518.17, subd. 3(a)(1) (2000) (noting awards of legal custody "shall be sole or joint"), *with* § 518.17, subd. 3(a)(2) (lacking such a requirement for physical-custody awards). It is without doubt, however, that proper identification of the physical-custody arrangement is a matter of concern for the legislature. *See* Minn.Stat. § 518.1705, subd. 4 (2000) (addressing parenting plans and stating, "the parents must designate whether the parents have joint legal custody or joint physical custody or which parent has *sole legal custody or sole physical custody*, or both" (emphasis added))[4]; § 256F.14, subd. 1(b) (Supp. 2001) (defining "relative care" for purposes of Minnesota Family Preservation Act in the terms of *"joint or sole * * * physical custody* of a child" (emphasis added)); § 518.18(f) (Supp.2001) (discussing modification of a custody order and recognizing that a parent may be granted "sole physical custody" and stating that "[i]f a parent has been *granted sole physical custody* of a minor and the child subsequently lives with the other parent, and temporary *sole physical custody* has been approved by the court or by a court-appointed referee, the court may suspend the obligor's child support obligation pending the final custody determination" (emphases added)).

■ Therefore, when a district court awards physical custody, whether based on a stipulation of the parties or not, it must also identify whether the physical-custody award is for sole or joint physical custody. Because the district court did not state which type of physical custody was awarded here, we remand so that it may do so. We note, however, that joint physical custody is not preferred. *See Wopata v. Wopata,* 498 N.W.2d 478, 482–83 (Minn.App. 1993); *Peterson v. Peterson,* 393 N.W.2d 503, 506 (Minn.App.1986). We leave to the discretion of the district court whether a hearing and additional evidence are neces-

sary to resolve this issue. Because we remand for a physical-custody determination, we decline to address mother's argument that the district court erred by applying the Hortis/Valento formula.

## II.

Mother contends that the district court erred when it failed to address the child's uninsured medical expenses, despite both parties' requests for the district court to do so. It is clear from the record that the district court's order fell within the definition of a "support order," as that term is defined for child support purposes. *See* Minn.Stat. § 518.54, subd. 4a (2000) (stating that the definition of "child support order" in chapter 518 applies to orders issued in paternity proceedings under chapter 257).

■ In its November 2001 order, the district court found that uninsured medical expenses were not addressed during the evidentiary hearing and that mother would have to bring a separate motion to raise this issue. But Minn.Stat. § 518.171, subd. 1(a) (2000), states that every support order *"must * * * expressly assign or re-serve"* uninsured medical costs. (Emphasis added.) Therefore, we also remand this issue to allow the district court to assign or reserve the child's uninsured medical expenses.

## III.

Father contends that the district court abused its discretion by denying his motion to appoint a parenting time expeditor. The district court has broad discretion in deciding visitation questions and will not be reversed absent a demonstrated abuse of that discretion. *Olson v. Olson,* 534 N.W.2d 547, 550 (Minn.1995). On the request of either party, a court "may appoint

**4.** We note that this case does not involve a    parenting plan under Minn.Stat. § 518.1705.

a parenting time expeditor." Minn.Stat. § 518.1751, subd. 1 (2000). The term "may" is permissive. Minn.Stat. § 645.44, subd. 15 (2000). Although father requested the appointment, on this record, father has not shown that the district court abused its discretion by denying his request.

## DECISION

Because a district court, in awarding physical custody, must identify whether physical custody is sole or joint, and because the district court did not do so here, we remand for the district court to make that determination. On remand, the district court shall also address the issue of the child's uninsured medical expenses as required by Minn.Stat. § 518.171, subd. 1(a). Finally, we affirm the denial of father's request for a parenting time expeditor because we find no abuse of discretion by the district court.

**Affirmed in part and remanded.**